UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TINAMARIE MIZZERO, individually
and for others similarly situated,

                            Plaintiff,

v.                                                          1:23-CV-0548
                                                            (GTS/ML)
ALBANY MED HEALTH SYSTEM,

                            Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

JOSEPHSON DUNLAP, LLP                          ANDREW DUNLAP, ESQ.
  Counsel for Plaintiff                        MICHAEL JOSEPHSON, ESQ.
11 Greenway Plaza, Suite 3050                  WILLIAM M. HOGG, ESQ.
Houston, TX 77046

ANDERSON ALEXANDER, PLLC                       WILLIAM CLIFTON ALEXANDER, ESQ.
  Co-counsel for Plaintiff                     AUSTIN W. ANDERSON, ESQ.
101 North Shoreline Boulevard, Suite 610       CARTER T. HASTINGS, ESQ.
Corpus Christi, TX 78401

E. STEWART JONES HACKER MURPHY, LLP            DAVID I. IVERSEN, ESQ.
  Local Counsel for Plaintiff
28 Second Street, Suite 203
Troy, NY 12180

BOND SCHOENECK & KING, PLLC                    MICHAEL D. BILLOK, ESQ.
  Counsel for Defendants
268 Broadway, Suite 104
Saratoga Springs, NY 12866

22 Corporate Woods Boulevard, Suite 501        ERIC M. O'BRYAN, ESQ.
Albany, NY 12211

GLENN T. SUDDABY, United States District Judge

### DECISION and ORDER

Currently before the Court, in this overtime pay action pursuant to the Fair Labor Standards Act ("FLSA") filed by Tinamarie Mizzero ("Plaintiff") against Albany Med Health System ("Defendant"), is Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 26.) For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Generally, in her Amended Complaint, Plaintiff asserts two claims on behalf of herself and other putative class members, both for a failure to pay overtime wages, one brought pursuant to the FLSA and one pursuant to the New York Labor Law ("NYLL").  (Dkt. No. 7.) Specifically, Plaintiff alleges that Defendant failed to pay her and other putative class members (all of whom are healthcare workers employed by Defendant) for overtime work in that it (a) deducted 30-minute lunch breaks from all shifts despite the fact that employees often were interrupted with work tasks during that purported break and were therefore unable to take either part or the whole of the break, (b) automatically rounded times to the next 15-minute increment to the detriment of the employee, and (c) required that employees complete "off the clock" pre- or post-shift work.  (*Id.*)

### B.    Parties' Briefing on Defendant's Motion to Dismiss

#### 1.    Defendant's Memorandum of Law

Generally, in its motion to dismiss, Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted because she has failed to sufficiently allege beyond mere speculation that she both worked more than 40 hours in any given week and that she had

2

uncompensated time in excess of those 40 hours.  (Dkt. No. 26, Attach. 1.)  Specifically,

Defendant argues that Plaintiff's generic allegations that she has worked more than 40 hours in

some or all weeks of her employment, or that she "typically" worked ten-hour shifts five days

per week are insufficient to render her allegations plausible, and she has failed to allege with any

detail pertinent facts regarding the allegedly uncompensated overtime, such as the length and

frequency of unpaid work and how Defendant supposedly indicated that Plaintiff was required to

work during the times when she alleges she was uncompensated.  (*Id.*)  Defendant further argues

that Plaintiff's allegations regarding the rounding of time is insufficient because such rounding is

a legal practice when used in a manner that would not result in a failure to compensate

employees for all time worked, and Plaintiff has not provided any allegations to that effect other

than a conclusory assertion that the rounding was in the favor of Defendant.  (*Id.*)

## 2.      Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff makes two arguments.  (Dkt.

No. 28.)  First, Plaintiff argues that her Amended Complaint plausibly alleges claims under both

the FLSA and NYLL as to her and the putative class members.  (*Id.* at 5-12.)  Specifically,

Plaintiff argues that she has alleged facts plausibly suggesting that she both worked more than 40

hours in a given week and that some of that work in excess of 40 hours was uncompensated, in

that (a) she has alleged that she typically worked ten-hour shifts five days per week and provided

an example of a specific workweek in which she worked more than 40 hours, and thus there is no

need to speculate whether there were weeks in which she worked more than 40 hours, (b) she is

not required to plead specifically the number of hours of overtime she worked, but merely that

there was uncompensated time in excess of 40 hours, and she has done so by alleging that

Defendant deducted 30-minute meal breaks despite requiring Plaintiff to continuously engage in work during those breaks, that she was routinely required to arrive 30 minutes before her scheduled shift to complete work-related tasks, and that Defendant's time-rounding policy was not neutral and worked to Defendant's primary benefit, all of which resulted in uncompensated work. (*Id.*)

Second, Plaintiff argues that, if the Court should find her allegations in any way insufficient, it should grant her leave to amend the Amended Complaint to cure any such deficiencies given that her First Amended Complaint was filed to correct a typo and not any defects that Defendant had not yet raised at the time of that amendment. (*Id.* at 12-13.)

### 3.   Defendant's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant makes two arguments. (Dkt. No. 34.) First, Defendant argues that Plaintiff's Amended Complaint is insufficient to plausibly state a claim for overtime wages because it essentially restates the elements of the claim without providing sufficient factual allegations to plausibly suggest a violation occurred in this case. (*Id.* at 5-11.) Specifically, Defendant argues that she has not alleged in a way that does not depend on speculation that, even if she had weeks where she worked more than 40 hours, those specific weeks were also when the alleged uncompensated time occurred, nor has she provided any specific details regarding that alleged uncompensated time beyond generalities that provide no indication of the actual amount of uncompensated time she was required to perform in a given week. (*Id.*)

Second, Defendant argues that Plaintiff's request for leave to amend her Amended Complaint should be denied because Plaintiff has not complied with the Court's Local Rules for

4

requesting such permission, has not identified what proposed amendments she seeks to make, and previously added substantive allegations when submitting the Amending Complaint but failed to provide any allegations that would indicate she can address the relevant pleading deficiencies raised by Defendant's motion.  (*Id.* at 11-14.)

## II.    GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

5

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8

7

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*
(citations omitted).

### III.    ANALYSIS

After careful consideration, the Court finds that Plaintiff's Amended Complaint states a
claim upon which relief can be granted to the extent that its claims regard meal breaks but does
not do so to the extent its claims regard pre- or post-shift work or a rounding policy.

"FLSA's overtime provision states that 'no employer shall employ any of his employees .
. . for a workweek longer than forty hours unless such employee receives compensation for his
employment in excess of the hours above specified at a rate not less than one and one-half times
the regular rate at which he is employed.'" *Lundy v. Catholic Health Sys. Of Long Island Inc.*,
711 F.3d 106, 110 (2d Cir. 2013) (quoting 29 U.S.C. § 207[a][1]).  "[I]n order to state a plausible
FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek
as well as some uncompensated time in excess of the 40 hours." *Lundy*, 711 F.3d at 114.  This
has been found to require "some degree of 'specificity.'" *Herrera v. Comme des Garcons, Ltd.*,
84 F.4th 110, 114 (2d Cir. 2023) (quoting *Nakahata v. New York-Presbyterian Healthcare Sys.,
Inc.*, 723 F.3d 192, 200 [2d Cir. 2013]).  "[W]hether a plausible claim has been pled is 'a
context-specific task that requires the reviewing court to draw on its judicial experience and
common sense.'" *Lundy*, 711 F.3d at 114 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 [2009]).
"While this Court has not required plaintiffs to keep careful records and plead their hours with
mathematical precision, we have recognized that it is employees' memory and experience that
lead them to claim in federal court that they have been denied overtime in violation of the FLSA
in the first place.  Our standard requires that plaintiffs draw on those resources in providing

complaints with sufficiently developed factual allegations" in order to sustain a claim at the pleadings stage. *Dejesus v. HF Mgmt Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013). Further, although there is no strict requirement to provide an approximation of overtime hours, such an approximation "'may help draw a plaintiff's claim closer to plausibility.'" *Herrera*, 84 F.4th at 115 (quoting *Dejesus*, 726 F.3d at 88).

As an initial matter, the Court notes that, in addition to the cases discussed by the parties in their memoranda, the Second Circuit has provided further binding guidance on the FLSA claim pleading standard since the parties concluded briefing in this case: *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 114 (2d Cir. 2023), which was issued on October 16, 2023. In *Herrera*, the Second Circuit held that "[w]here the Plaintiffs plausibly allege that they worked more than forty hours per week as part of their regularly scheduled workweek, they have adequately stated a claim under the FLSA and need not list the specific workweeks during which they worked more than forty hours." *Herrera*, 84 F.4th at 112. The allegations in question included that the plaintiffs "regularly-scheduled hours consisted of five shifts a week" and the hours of such regularly scheduled shifts, which consisted of more than eight hours per day. *Herrera*, 84 F.4th at 112. They also alleged hours in addition to those regular shifts, such as approximately five hours per week of post-shift duties for plaintiffs on the closing shift, three additional hours per week every Tuesday and Thursday for shipments of merchandise, and two specific weeks during the year when they were required to work two thirteen hours shifts in addition to their regularly scheduled shifts. *Id.* The Second Circuit concluded that the allegations regarding the regularly scheduled work shifts, which demonstrated that the plaintiffs worked more than 40 hours in their regular workweeks, were sufficient by themselves to allege a

9

plausible claim of overtime and no more was required, although the additional allegations of other overtime supplemented and strengthened such plausibility. *Id*. at 115.

Notwithstanding the additional impact of *Herrera*, Defendant's reliance on *Lundy*, *Nakaharta*, and *Dejesus* from a factual standpoint is misplaced. In all three of those cases, the conclusion that the Second Circuit ultimately came to was that the plaintiffs had not provided sufficient factual allegations to plausibly suggest, as a matter of more than speculation, that they met the threshold of having worked more than 40 hours as required by the FLSA. For instance, in *Lundy*, the Second Circuit found the plaintiffs' allegations insufficient because the shift details alleged in the complaint required significant speculation to conclude that there had been any instances in which the plaintiffs had actually worked more than 40 hours in any week. *Lundy*, 711 F.3d at 114. By contrast, Plaintiff here has alleged that she typically worked scheduled shifts totaling approximately 50 hours per week, not including the additional time she alleges was uncompensated in the form of meal breaks and pre-shift "off the clock" work. Although Defendant latches onto Plaintiff's use of the word "typically" as rendering her allegations speculative, unlike the situation in *Lundy*, it requires no speculation to plausibly believe that Plaintiff had at least one week, and likely many weeks (given the standard definitions of the

word "typical")[1] in which she worked well more than 40 hours, even if it is possible that in a non-typical week Plaintiff may have worked fewer than the typical 50 hours.[2]

Similarly, in *Dejesus*, the plaintiff alleged merely that she regularly worked more than 40 hours a week and was not properly compensated, allegations that the Second Circuit concluded did little more than track the language of the FLSA regarding an overtime claim without providing any specific factual information regarding the plaintiff's unique situation. *Dejesus*, 726 F.3d at 89.   Again, that is not the case here.   Although Plaintiff does include standard-type language regarding having worked more than 40 hours, she also, as already discussed, alleged that she typically worked ten-hour shifts, five days per week, an allegation that is certainly more specific than a mere recitation of the requirements of the statute.   *See Herrera*, 84 F.4th at 115 (concluding that allegations that the plaintiffs' "regularly scheduled work hours consisted of five shifts each week, and that each shift lasted between eight and three-quarter hours and nine hours"

---

[1]      These include "conforming to a type," "someone or something that shows the most usual characteristics of a particular type of person or thing, and is therefore a good example of that type," or an action or feature that "shows [someone or something's] usual qualities or characteristics."  *See Typical*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/typical; *Typical*, Collins English Dictionary, https://www.collinsdictionary.com/us/dictionary/english/typical.  Synonyms of "typical" include "normal," "usual," and "standard."  *See Typical*, Merriam-Webster Thesaurus, https://www.merriam-webster.com/thesaurus/typical.

[2]      Indeed, the Second Circuit's issue with the use of the word "typically" in *Lundy* occurred in the context of two of the named plaintiffs alleging that they "typically" worked shifts that themselves did not amount to more than 40 hours, but that they also "typically" had missed or interrupted meal breaks or certain amounts of pre-shift unpaid work, such that that the court would be required to speculate whether Plaintiff had experienced a combination of shift length and other unpaid working time that would raise her total weekly time worked to more than 40 hours in a given week. *Lundy*, 711 F.3d at 114-15.  This is simply not the case that is presented here.

for a total of between 43.75 and 45 hours of work per week was sufficient to meet the pleading bar on its own). Simply put, the factual circumstances of the Second Circuit cases chiefly relied upon by Defendant are not analogous because here the speculation regarded whether there might have been some weeks when Plaintiff *did not* work more than 40 hours, whereas in those cases the speculation regarded whether there were any weeks in which the plaintiffs plausibly *did* work more than 40 hours. For the same reasons discussed in *Herrera*, Plaintiff's allegations that she typically worked ten-hour shifts, five days per week are sufficient to meet the Second Circuit's standard for pleading an FLSA overtime claim. *See Herrera*, 84 F.3d at 117 ("The pleading standard is satisfied, however, if plaintiffs allege that their regularly scheduled workweek for a given period of time included more than forty hours of work, so that they were eligible for overtime during <u>every</u> week in which they worked their regular schedule.") (emphasis in original).

There is, however, a nuance in this case that was not present in *Herrera*. Specifically, at issue in *Herrera* was a claim that the defendant had not compensated the plaintiffs at the legally required overtime rate for regularly scheduled hours that they worked in a week above 40 hours. *Herrera*, 84 F.4th at 112 (noting that the allegations in the complaint included that plaintiffs were deemed to be "managers" and exempt from overtime pay rules, but that such characterization was inaccurate based on their actual duties and thus they were entitled to overtime pay). Therefore, in *Herrera*, the bare fact that the plaintiffs had plausibly alleged that they worked more than 40 hours in a week was sufficient to survive a motion to dismiss, because plausibly alleging that they worked more than 40 hours in a given week inherently also plausibly alleged that some of that overtime was uncompensated.

12

Such is not necessarily the case here.  Plaintiff's Amended Complaint does not assert any factual allegations that plausibly suggest that she was not paid appropriately for any hours of her scheduled shift time she worked.  Instead, the only times she appears to allege was uncompensated are (a) the amount of time she was required to spend on work tasks during the half-hour when a meal break was deducted, (b) any rounding up to 15 minutes that may have been in Defendant's favor, and (c) any pre-shift work she completed "off the clock."  Thus, merely showing that she worked more than 40 hours in a given week is not sufficient to plausibly state an FLSA claim in this case; she must additionally provide some allegations to plausibly suggest that the alleged uncompensated time also occurred during a given week when she worked more than 40 hours.  *See Lundy*, 711 F.3d at 114 (recognizing that, in order to state a plausible FLSA claim, a plaintiff must "sufficiently allege 40 hours of work in a given workweek *as well as some uncompensated time in excess of the 40 hours*") (emphasis added).

Plaintiff's allegations regarding deducted lunch breaks appear to satisfy this at least to the point of plausibility.  Although Plaintiff does not specify whether the 30-minute lunch breaks are encompassed within the 10-hours shifts she alleges she typically worked five days per week (i.e., the shift was actually nine-and-a-half hours of work and a 30-minute "lunch break"), that is a reasonable interpretation of the Amended Complaint and, in the end, somewhat immaterial, given that, whether such meal breaks are included in the 50-hour total or in addition to it, Plaintiff has still met the requirement to show work in excess of 40 hours as was discussed above.  As noted in *Herrera*, a bona fide meal period is one during which an employee is "'completely relieved from duty,' and an employee 'is not relieved if he is required to perform any duties, whether active or inactive, while eating,'" or where "the employee is required to be

13

on-call to handle whatever work arises during the lunch break." *Herrera*, 84 F.4th at 115-16

(quoting 29 C.F.R. § 785.19[a]).  Specifically, the Second Circuit stated that the relevant

regulation "does not require employees to quantify how many minutes were spent during any

given lunch break actually attending to customers in order to demonstrate that their lunch break

was not a 'bona fide meal period.'"  *Herrera*, 84 F.4th at 116.

      As to the meal break, Plaintiff has alleged that Defendant automatically deducted 30

minutes from each shift for a meal period, but that it required Plaintiff and the putative class

members "to remain on-duty and working throughout their shifts and continuously subjects them

to interruptions during their unpaid meal period," forced them to "substantially perform their

regular patient care job duties and responsibilities" during such break, and, as a result of "these

constant work interruptions," Plaintiff was "not free to engage in personal activities" during the

break.  (Dkt. No. 7, at ¶¶ 50-59.)  These allegations, while somewhat lacking in specific detail,

are nonetheless sufficient to satisfy the plausibility standard in that they sufficiently suggest that

Plaintiff was required to remain on-call and perform work-related tasks during her lunch break

and thus did not receive a bona fide meal break.  They are notably similar to (although again,

somewhat less detailed than) the allegations that the Second Circuit found to be sufficient in

*Herrera*, where the plaintiffs alleged with regard to their meal period that they "were not

completely relieved from duty during lunch breaks, and were required to attend to clients on their

floor if someone walked in . . . and to answer calls and questions from management or co-

workers."  *Herrera*, 84 F.4th at 116.  Of note, the Second Circuit in *Herrera* explicitly rejected

the district court's finding that the plaintiffs there were required to provide greater detail about

the duration or frequency of work performed during meal periods in order to plausibly plead

their FLSA claim.  *Id.*  Plaintiff's allegations, taken as true as they must be at this stage, plausibly suggest that she did not receive a bona fide meal break during her shifts because she was required to remain on-call and attend to any patient care duties and responsibilities that might arise during those breaks.  She has therefore sufficiently alleged that there is some amount of uncompensated time in excess of 40 hours in a given week.

Further, the fact that she does not specifically allege that she had uncompensated lunch periods or pre-shift work during the specific week she identified in the Amended Complaint as one in which she worked more than 40 hours, or during a specific week when she worked five ten-hour shifts is not inherently fatal to her Amended Complaint.  As was discussed above, Plaintiff alleged that a 30-minute meal break was deducted from *every* shift but that she was required to remain on-duty and working throughout her shifts and was continuously subjected to interruptions during her meal breaks, and that those interruptions were so constant that she was not free to engage in personal activities during those breaks.  (Dkt. No. 7, at ¶¶53-56.)  Given these allegations that she was required to remain on-duty and that interruptions to perform work tasks during her meal break were continuous and constant, it is not speculative to plausibly infer that there would have been weeks when she was required to work for some or all of one or more meal breaks during a given week when she worked her typical shift of ten-hour days, five days per week.  Although it is true that the Amended Complaint does not quantify how much uncompensated time Plaintiff had in a given week, such specificity is not required; she must plead only that there was *some* uncompensated time.  *See Herrera*, 84 F.4th at 116 ("The regulation thus does not require employees to quantify how many minutes were spent during any given lunch break actually attending to customers in order to demonstrate that their lunch break

was not a 'bona fide meal period.'").  The Court therefore finds that Plaintiff's Amended Complaint narrowly suffices to plead an overtime claim related to the meal breaks.

However, the allegations regarding pre-shift work and time rounding are not sufficient. As to the pre-shift work, Plaintiff alleges that Defendant "regularly" required her to arrive "roughly 30 minutes before her scheduled shifts and begin working 'off the clock,'" preparing the office and tools and complete required patient charting, stating also that this off-the-clock work was a "routine" occurrence.  (Dkt. No. 7, at ¶ 63, 64.)  Unlike meal breaks (which Plaintiff alleged occurred every day and during which she was required to remain on-duty and which was constantly interrupted with work tasks), there is no suggestion in the Amended Complaint regarding the actual frequency with which this pre-shift work occurred (i.e., every day, once per week, once per month) and vague words such as "regularly" and "routine" do not alone suffice to plausibly suggest that any such occurrences necessarily would have occurred within the same week as she worked her typical shift schedule.

The Court also rejects Plaintiff's contention that the allegations here are sufficient for similar reasons raised in this Court's decision in *Eggleston v. City of Binghamton*, No. 3:20-CV-56, 2020 WL 5232075 (N.D.N.Y. Sept. 2, 2020) (Hurd, J.).  In that case, U.S. District Judge David N. Hurd found that similar allegations of having worked more than 40 hours per week were sufficient; however, the situation is materially distinguishable from the one presented here. In that case, Judge Hurd's determination turned in large part on the fact that, "[a]s plaintiffs emphasize in opposition, there is no possibility of a fishing expedition here – neither plaintiff claims any work "off the clock" was done without the City's knowledge or any work that would otherwise be unrecorded. . . . Rather, this case involves two plaintiffs seeking to recover from

16

their longtime employer for unpaid time recorded in defendant's records." *Eggleston v. City of Binghamton*, 2020 WL 5232075, at *10.  Here, by contrast, Plaintiff is explicitly alleging that she was not compensated for work that was performed "off the clock," either during time when she was recorded as having taken a lunch break or before her scheduled shift began.  Thus, her allegedly uncompensated time is not as likely to be documented by the records held by Defendant as was the case in *Eggleston*, which raises greater concerns that a sparse pleading is merely a means by which to gain access to the Defendant's evidence in order to determine whether a violation of the FLSA and NYLL might exist.  The purpose of the pleading standards is to prevent such speculative searching, and requires a plaintiff to show that his or her claim is at least plausible before opening a defendant up to such discovery.  As discussed above, whether an FLSA claim has been plead with the requisite plausibility is context-specific, and the context in *Eggleston* differs too greatly from the one in this case to serve as a compelling guide.

As to Plaintiff's allegations regarding rounding of time, she entirely fails to provide any factual allegations that would push that aspect of her claim from speculative to plausible.  The only factual allegation Plaintiff provides is that Defendant had a "uniform policy of automatically rounding . . . employees' recorded time punches to the nearest 15-minute increment to [Defendant's] – not these employees' – primary benefit."  (Dkt. No. 7, at ¶ 60.)  She offers no factual allegations as to how specifically this rounding policy was to Defendant's benefit or resulted in uncompensated time.  Such a bare assertion does not suggest a plausible violation of the FLSA or NYLL.

For all of the above reasons, the Court finds that Plaintiff has plead sufficient facts to plausibly allege a claim under the FLSA (and by extension the NYLL) as to meal breaks, but not

as to pre- or post-shift work or a rounding policy.  As stated above in Part I.B.2 of this Decision and Order, Plaintiff has preemptively requested the opportunity to amend her Amended Complaint should the Court find it deficient in any respect.  Because the Court is not convinced that Plaintiff would be unable to potentially remedy the identified pleading defects in her Amended Complaint, the Court will permit her to file a motion to amend her Amended Complaint, should she wish, within 30 days of the date of this Decision and Order.

The Court requires a motion, and does not simply grant Plaintiff such leave, because (1) she already amended her pleading "once as a matter of course" under Fed. R. Civ. P. 15(a) (regardless of the fact that she may have done so only to correct a typographical error), and (2) her above-referenced request for such leave fails to attach a proposed Second Amended Complaint that identifies the proposed insertions and deletions of language through the use of the redline/strikeout method or other equivalents means, as required by Local Rule 15.1(a).  This identification requirement enables the Court to conduct the futility analysis required by *Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that permissible grounds upon which to base the denial of a motion for leave to file an amended complaint include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 26) is **GRANTED in part** and **DENIED in part** such that the claims in Plaintiff's Amended Complaint (Dkt. No. 7) are **DISMISSED without prejudice** to refiling in this action to the extent they regard pre- or post-

18

shift work or a rounding policy, but **<u>SURVIVE</u>** this Decision and Order to the extent they regard meal breaks; and it is further

      **ORDERED** that Plaintiff may file a motion to amend the Amended Complaint, should she wish, to correct the above-discussed pleading deficiencies within **THIRTY DAYS** of the date of this Decision and Order; and it is further

      **ORDERED** that, should Plaintiff file such a timely motion to amend, that motion shall be automatically referred to U.S. Magistrate Judge Miroslav Lovric for decision.

Dated:  May 9, 2024
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge