**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**ALBANY DIVISION**

| | |
|---|---|
| TINAMARIE MIZZERO, Individually and for Others Similarly Situated | **Case No. 1:23-cv-00548 (GTS/ML)** |
| v. | Jury Trial Demanded |
| ALBANY MED HEALTH SYSTEM | FLSA Collective Action<br>Rule 23 Class Action |

## SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.    Tinamarie Mizzero (Mizzero) brings this class and collective action to recover unpaid overtime and other damages from Albany Med Health System (Albany Med).

2.    Mizzero worked for Albany Med as a Medical Assistant in Albany, New York.

3.    Like the Putative Class Members (as defined below), Mizzero regularly worked more than 40 hours in a workweek.

4.    But Albany Med did not pay for all the hours they worked.

5.    Instead, Albany Med automatically deducted 30 minutes a day from these employees' work time for so-called meal breaks.

6.    Mizzero and the Putative Class Members were thus not paid for that time.

7.    But Albany Med fails to provide Mizzero and the Putative Class Members with *bona fide* meal breaks.

8.    Instead, Albany Med requires Mizzero and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions during their unpaid "meal breaks."

9.      Albany Med's auto-deduction policy violates the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) by depriving Mizzero and the Putative Class Members of overtime pay for all overtime hours worked.

## JURISDICTION & VENUE

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11.     The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

12.     This Court has general personal jurisdiction over Albany Med because Albany Med is domestic corporation.

13.     Venue is proper because Albany Med maintains its headquarters in Albany, New York, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

14.     Mizzero worked for Albany Med as a Medical Assistant at the Albany Medical Center in Albany, New York from approximately September 2019 until January 2023.

15.     Throughout her employment, Albany Med classified Mizzero as non-exempt and paid her on an hourly basis.

16.     But throughout her employment, Albany Med subjected Mizzero to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

17.     Mizzero's written consent has already been filed. *See* ECF 1-1.

18.     Mizzero brings this action on behalf of herself and other similarly situated hourly, non-exempt Albany Med employees who were subject to Albany Med's automatic meal break deduction policy.

19.    Albany Med automatically deducts 30 minutes/shift from these employees' recorded hours worked for so-called "meal breaks."

20.    But Albany Med uniformly requires these employees to remain on-duty and working throughout their shifts and continuously subjects them to interruptions during their unpaid "meal breaks."

21.    The FLSA Collective of similarly situated employees is defined as:

**All hourly, non-exempt Albany Med employees who received an automatic meal period deduction at any time during the past 3 years ("FLSA Collective Members" or "FLSA Collective").**

22.    Mizzero also seeks to represent such a class under the NYLL pursuant to FED. R. CIV. P. 23.

23.    The New York Class of similarly situated employees is defined as:

**All hourly, non-exempt Albany Med employees who received an automatic meal period deduction while working in New York at any time during the past in the past 6 years and 228 days[1] from the filing of this Complaint ("New York Class Members" or the "New York Class").**

24.    The FLSA Collective Members and New York Class Members are collectively referred to as the "Putative Class Members."

25.    The Putative Class Members can be readily ascertained and identified through Albany Med's business and personnel records.

26.    Albany Med is a New York non-profit corporation that maintains its headquarters in Albany, New York.

---

[1]    The statute of limitations was tolled 228 days due to Governor Cuomo's Executive Order 202.8 (2020) and subsequent orders Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55.1, 202.60, and 202.67. In total, the Executive Orders were effective and implemented tolling for 228 days, from March 20th to November 3, 2020. *See McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings County 2021) (calculating that, together, the Executive Orders lasted 228 days).

27.    Albany Med may be served with process by serving its President, **Dennis McKenna, at 43 New Scotland Avenue, Albany, New York 12208**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

28.    At all relevant times, Albany Med was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

29.    At all relevant times, Albany Med, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

30.    At all relevant times, Albany Med was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because Albany Med, as a hospital network, is engaged in the operation of a hospital and is an institution primarily engaged in providing healthcare services.

31.    At all relevant times, Albany Med has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cellphones, computers, medical tools and equipment, personal protective equipment, etc. – that have been moved in or produced for commerce.

32.    In each of the past 3 years, Albany Med has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

33.    At all relevant times, Mizzero and the Putative Class Members were Albany Med's "employees" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

34.    Albany Med uniformly deducted 30 minutes/shift from Mizzero's and the Putative Class Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, uninterrupted meal breaks.

35.     As a result, Albany Med failed to pay Mizzero and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

36.     Albany Med's automatic meal break deduction policy, which deprives Mizzero and the Putative Class Members of overtime compensation for the weeks in which these workers work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

FACTS

37.     Albany Med is a healthcare services provider that operates hospitals across New York.

38.     Albany Med employs patient care workers, including Mizzero and the Putative Class Members, to provide healthcare services and treat the patients in its various facilities.

39.     Albany Med uniformly classifies these employees as non-exempt and pays them on an hourly basis.

40.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

41.     For example, Mizzero worked for Albany Med as a Medical Assistant at the Albany Medical Center located in Albany, New York from approximately September 2019 until January 2023.

42.     As a Medical Assistant, Mizzero's primary responsibilities include providing patient care to the patients at Albany Medical Center, such as monitoring patients, checking vitals, rooming patients, charting treatments, and assisting doctors and other patient care staff.

43.     Throughout her employment, Albany Med classified Mizzero as non-exempt and paid her on an hourly basis.

44.     Throughout her employment, Albany Med subjected Mizzero to its common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for meal breaks, regardless of whether she actually received a *bona fide* meal break.

45.    Mizzero and the Putative Class Members performed their jobs under Albany Med's supervision, and using materials, equipment, and technology approved and supplied by Albany Med.

46.    Albany Med requires Mizzero and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

47.    At the end of each pay period, Mizzero and the Putative Class Members received wages from Albany Med that were determined by common systems and methods that Albany Med selected and controlled.

48.    Albany Med requires its hourly, non-exempt employees, including Mizzero and the Putative Class Members, to record their hours worked using Albany Med's timeclock system.

49.    Further, Albany Med subjects its hourly, non-exempt employees, including Mizzero and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

50.    Specifically, Albany Med automatically deducts 30 minutes from Mizzero and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

51.    But Albany Med fails to provide Mizzero and the Putative Class Members with *bona fide* meal periods.

52.    Instead, Albany Med requires Mizzero and the Putative Class Members to remain on-duty and working throughout their shifts and continuously subjects them to interruptions during their unpaid meal periods.

53.    Indeed, because of these constant work interruptions, Mizzero and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

54.    Rather, during their unpaid "meal breaks," Mizzero and the Putative Class Members are forced to substantially perform their regular patient care job duties and responsibilities.

55.    Thus, Mizzero and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Albany Med's – not these employees' – predominant benefit.

56.    This unpaid time is compensable under the FLSA and NYLL because UHC knew, or should have known, that (1) Mizzero and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant interruptions, (7) they remained on Albany Med's premises, and/or (8) they predominantly spent their unpaid meal periods performing their regular patient care duties for Albany Med's predominant benefit..

57.    Albany Med failed to exercise its duty to ensure Mizzero and the Putative Class Members were not performing work that Albany Med did not want performed during their unpaid "meal breaks."

58.    Despite accepting the benefits, Albany Med did not pay Mizzero and the Putative Class Members for the compensable work they performed during their "meal breaks."

59.    Thus, under Albany Med's uniform automatic meal break deduction policy, Mizzero and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours in violation of the FLSA and NYLL.

60.    Further, in addition to failing to pay Mizzero and the Putative Class Members for the work they perform during their unpaid "meal breaks," Albany Med also subjects Mizzero and the Putative Class Members to its uniform policy of automatically rounding these employees' recorded time punches to the nearest 15-minute increment to Albany Med's – not these employees' – primary benefit.

61.     Albany Med's uniform rounding policy violates the FLSA and NYLL by depriving Mizzero and the Putative Class Members of overtime pay for all overtime hours worked because Albany Med fails to include all work time in these employees' total hours worked.

62.     Finally, Albany Med also subjects Mizzero and the Putative Class Members to its common practice of requiring its hourly, non-exempt patient care employees to work outside their scheduled shifts "off the clock."

63.     For example, Albany Med regularly required Mizzero to arrive roughly 30 minutes before her scheduled shifts and begin working "off the clock."

64.     Beginning in approximately October 2022, Albany Med required and expected Mizzero and Putative Class Members to arrive approximately 20-to-30 minutes before their scheduled start times each shift worked.

65.     During this routine "off the clock" work, Mizzero and the Putative Class Members are required to prepare the office and facilities for incoming patients, prepare the tools and materials to be ready for use, and complete any required patient charting.

66.     Albany Med, however, does not pay Mizzero and the Putative Class Members for this required "off the clock" work.

67.     Albany Med instructs Mizzero and Putative Class Members not to clock in too early for their shifts, and instead instructs them only to clock in within approximately 6 or 7 minutes of their scheduled start times.

68.     In combination with Albany Med's instruction or expectation that Mizzero and Putative Class Members arrive approximately 20-to-30 minutes early to prepare for their day, but not clock in too early, Albany Med requires these employees to perform approximately 18.5 minutes of off-the-clock work on average each shift before they clock in for work.

69.    Albany Med likewise instructs Mizzero and Putative Class Members to clock out within about 6 to 7 minutes of their scheduled end of day times.

70.    However, Mizzero and Putative Class Members are required to stay late after clocking out each shift to complete their work duties, including completing charting, cleaning their work areas, organizing supplies, and assisting with emergencies.

71.    On average, Mizzero stayed late an additional 15-to-30 minutes after clocking out each shift worked to complete her job duties.

72.    Mizzero witnessed other Putative Class Members staying late after clocking out to complete their compensable job duties and perform such work for a similar amount of time.

73.    In combination with Albany Med's instruction or expectation that Mizzero and Putative Class Members clock out within approximately 6 or 7 minutes of their end-of-shift time but nonetheless stay late to complete their job duties, Albany Med requires these employees to perform approximately 16 minutes of off-the-clock work on average each shift before after clock out for work.

74.    Albany Med's off-the-clock practices, by themselves, result in Mizzero and Putative Class Members suffering unpaid overtime wages.

75.    Additionally, Albany Med's strict clock-in and clock-out practices, off-the-clock practices, and time-rounding policies work together to ensure that Albany Med's uniform time-rounding system is non-neutral in application and results, over time, in Mizzero and Putative Class Members not being paid for all hours worked.

76.    That's because if Mizzero and Putative Class Members strictly follow Albany Med's clock-in and clock-out practices of only clocking in within approximately 6 or 7 minutes of their start time, and only clocking out within 6 or 7 minutes of their end-of-day times, their recorded work time will round down in Albany Med's favor far more often than it would round in the workers' favor

resulting in a non-neutral application and, over time, result in Mizzero and Putative Class Members not being paid for all hours worked.

77.    But the FLSA and NYLL requires Albany Med to pay Mizzero and the Putative Class Members for this compensable work time.

78.    Indeed, Albany Med mandates and requires Mizzero and the Putative Class Members to routinely work "off the clock" to complete their job duties; this "off the clock" work occurs on Albany Med's premises and is controlled by Albany Med; and this "off the clock work" is undertaken primarily for Albany Med's (and its business') benefit.

79.    Further, this routine pre- and/or post-shift "off the clock" work is necessary to the principal work Mizzero and the Putative Class Members perform – providing healthcare services and treating patients in Albany Med's facilities.

80.    Albany Med requires Mizzero and the Putative Class Members to complete this routine pre- and/or post-shift "off the clock" work to ensure these employees are prepared and able to provide patient care services in accordance with Albany Med's expectations, as well as in accordance with well-established industry-wide patient care standards.

81.    Thus, this routine pre- and/or post-shift "off the clock" work is therefore integral and indispensable to Mizzero and the Putative Class Members' patient care job duties and responsibilities.

82.    Indeed, Albany Med could not have eliminated its practice of requiring (or otherwise permitting) Mizzero and the Putative Class Members to work "off the clock" either before and/or after their shifts altogether without impairing these employees' ability to perform their patient care work in accordance with Albany Med's and industry-wide patient care standards.

83.    Albany Med's uniform practice of requiring (or otherwise permitting) Mizzero and the Putative Class Members to work "off the clock" either before or after their scheduled shifts violates the FLSA and NYLL by depriving Powell and the Putative Class Members of overtime pay for all

overtime hours worked because Albany Med fails to include time these employees spend performing compensable work "off the clock" in their total hours worked.

84.    Albany Med knows Mizzero and the Putative Class Members routinely perform work "off the clock" before/after their scheduled shifts and/or during their unpaid meal breaks because Albany Med expects and requires these employees to do so.

85.    But Albany Med does not pay Mizzero and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA and NYLL.

86.    Mizzero worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

87.    In fact, since July 2021, Mizzero has worked more than 40 hours almost every workweek.

88.    For example, during the workweek starting on August 2, 2021, Mizzero worked more than 40 hours.

89.    Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

90.    Indeed, Mizzero and the Putative Class Members typically work 10-hour shifts for 5 days a week.

91.    And Mizzero and the Putative Class Members regularly are also required to work before/after their shifts and/or during their unpaid meal breaks "off the clock" in order to complete their job duties and patient care responsibilities.

92.    As a result, Mizzero and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

-11-

93.    When Mizzero and the Putative Class Members worked more than 40 hours in a workweek, Albany Med did not pay them overtime wages at 1.5 times their regular hourly rate for all overtime hours worked because Albany Med failed to include time these employees worked "off the clock," either before their shifts and/or during their unpaid meal breaks, in their total number of hours worked in a given workweek.

94.    Albany Med knew, or should have known, it was subject to the FLSA and NYLL, including their respective overtime provisions.

95.    Albany Med knew, or should have known, the FLSA and NYLL require it to pay employees, including Mizzero and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

96.    Albany Med knew, or should have known, Mizzero and the Putative Class Members worked more than 40 hours in a workweek.

97.    Albany Med knew, or should have known, Mizzero and the Putative Class Members regularly worked "off the clock" either before/after their shifts and/or during their unpaid meal breaks because Albany Med expected and required them to do so.

98.    Albany Med knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA and NYLL.

99.    Albany Med knowingly, willfully, and/or in reckless disregard carried out these illegal policies and practices that deprived Powell and the Putative Class Members of overtime compensation for all overtime hours worked in violation of the FLSA and NYLL.

100.    Nonetheless, Albany Med failed to pay Mizzero and the Putative Class Members overtime compensation for all hours these employees worked in excess of 40 hours in a workweek.

101.    Albany Med's failure to pay Mizzero and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

102.    Mizzero brings this case as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

103.    The Putative Class Members were victimized by Albany Med's pattern, practice, and/or policy which deprived these employees' of overtime pay for all overtime hours work in willful violation of the FLSA and NYLL.

104.    Other Putative Class Members worked with Mizzero and indicated they were paid in the same manner, performed similar work, and were subject to Albany Med's same illegal pay and timekeeping policies.

105.    Based on her experiences with Albany Med, Mizzero is aware Albany Med's illegal practices were imposed on the Putative Class Members.

106.    The Putative Class Members are similarly situated in all relevant respects.

107.    Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

108.    Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

109.    Rather, the Putative Classes are held together by (1) Albany Med's automatic meal break deduction policy, (2) Albany Med's uniform rounding policy, and/or (3) Albany Med's uniform practice of requiring employees to work "off the clock" before and/or after their shifts, each of which systematically deprived Mizzero and the Putative Class Members of overtime wages for all overtime hours worked.

110.    The Putative Class Members are similarly denied overtime compensation for all overtime hours worked when they work more than 40 hours in a workweek.

111.    The back wages owed to Mizzero and the Putative Class Members will be calculated using the same records and using the same formula.

112.    Mizzero's experiences are therefore typical of the experiences of the Putative Class Members.

113.    Mizzero has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

114.    Like each Putative Class Member, Mizzero has an interest in obtaining the unpaid wages owed under state and/or federal law.

115.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

116.    Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries and Albany Med will reap the unjust benefits of violating the FLSA and NYLL.

117.    Further, even if some of the Putative Class Members could afford individual litigation against Albany Med, it would be unduly burdensome to the judicial system.

118.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

119.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

120.    Among the common questions of law and fact are:

a.    Whether Albany Med engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and NYLL;

b.    Whether Albany Med's automatic meal break deduction policy deprived Mizzero and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and NYLL;

c.    Whether Albany Med failed to pay Mizzero and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek, including hours worked "off the clock" either before/after their shifts and/or during missed and interrupted meal breaks, in violation of the FLSA and NYLL;

d.    Whether Albany Med knew, or had reason to know, Mizzero and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA and NYLL;

e.    Whether Albany Med instituted a common time-rounding system that applied to all Putative Class Members;

f.    Whether Albany Med's time-rounding system was non-neutral in application;

g.    Whether Albany Med required Mizzero and Putative Class Members to arrive early but wait to clock in for their shifts;

h.    Whether Albany Med required Mizzero and Putative Class Members to clock out near their end-of-shift times but continue working;

i.  Whether Mizzero's and Putative Class Members' non-rounded and rounded timekeeping recorded demonstrate the workers were paid for all hours worked;

j.  Whether Albany Med's violations of the FLSA and NYLL resulted from a continuing course of conduct;

k.  Whether Albany Med's decision not to pay Mizzero and the Putative Class Members overtime compensation for all overtime hours worked was made in good faith;

l.  Whether Albany Med's failure to pay Mizzero and the Putative Class Members all their earned overtime wages was the result of a *bona fide* dispute; and

m.  Whether Albany Med's violations of the FLSA and NYLL were willful.

121.    Mizzero and the Putative Class Members sustained damages arising out of Albany Med's illegal and uniform employment policies.

122.    Mizzero knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

123.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Albany Med's records, and there is no detraction from the common nucleus of liability facts.

124.    Therefore, the issue of damages does not preclude class or collective treatment.

125.    Albany Med is liable under the FLSA and NYLL for failing to pay Mizzero and the Putative Class Members overtime compensation for all overtime hours worked when they work more than 40 hours in a workweek.

126.    Consistent with Albany Med's illegal automatic meal break deduction policy, Mizzero and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

127.    Consistent with Albany Med's illegal automatic rounding policy, Mizzero and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

128.    Consistent with Albany Med's illegal pre- and post-shift "off the clock" work practice, Mizzero and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

129.    As part of its regular business practices, Albany Med intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and NYLL with respect to Mizzero and the Putative Class Members.

130.    Albany Med's illegal pay and timekeeping policies and practices deprived Mizzero and the Putative Class Members of the premium overtime wages they are owed under state and federal law.

131.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

132.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

133.    Those similarly situated employees are known to Albany Med, are readily identifiable, and can be located through Albany Med's business and personnel records.

**C<small>OUNT</small> I**

**F<small>AILURE TO</small> P<small>AY</small> O<small>VERTIME</small> W<small>AGES</small> U<small>NDER THE</small> FLSA**
**(FLSA C<small>OLLECTIVE</small>)**

134.    Mizzero realleges and incorporates all other paragraphs by reference.

135.    Mizzero brings her FLSA claim as a collective action on behalf of herself and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

136.    Albany Med violated, and is violating, the FLSA by failing to pay Mizzero and the FLSA Collective Members overtime wages for all hours worked in excess of 40 in a workweek, including hours worked "off the clock," either before or after their scheduled shifts and/or during these employees' unpaid meal periods.

137.    Throughout the relevant period, Albany Med (1) automatically deducted 30 minutes/shift from Mizzero's and the FLSA Collective Members' recorded hours worked for meal breaks; (2) automatically rounded these employees recorded time punches to the nearest 15-minute increment to Albany Med's primary benefit; and (3) required these employees to work unpaid "off the clock" before and/or after their shifts.

138.    But throughout the relevant period, Albany Med expected and required Mizzero and the FLSA Collective Members to remain on-duty and be available to work during their unpaid meal breaks and/or before/after their scheduled shifts.

139.    Mizzero and the FLSA Collective Members have been harmed as a direct and proximate result of Albany Med's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Albany Med derived a direct and substantial benefit.

140.    Albany Med knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Mizzero and the FLSA Collective Members overtime compensation for all overtime hours worked.

141. Albany Med's failure to pay Mizzero and the FLSA Collective Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay overtime compensation for all overtime hours worked made in good faith.

142. Accordingly, Mizzero and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

**COUNT II**

**FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL**
**(NEW YORK CLASS)**

143. Mizzero realleges and incorporates all other paragraphs by reference.

144. Mizzero brings her NYLL claim as a class action on behalf of herself and the New York Class Members pursuant to FED. R. CIV. P 23.

145. At all relevant times, Albany Med was an "employer" subject to the requirements of the NYLL and its implementing regulations.

146. At all relevant times, Albany Med employed Mizzero and the New York Class Members as covered "employees" within the meaning of the NYLL.

147. Mizzero and the New York Class Members are entitled to overtime pay under the NYLL.

148. The NYLL requires employers, like Albany Med, to pay employees, including Mizzero and the New York Class Members, overtime compensation at rates not less than 1.5 the employee's regular rate of pay for all hours worked over 40 in one workweek.

149. Albany Med violated, and is violating, the FLSA by failing to pay Mizzero and the New York Class Members overtime wages for all hours worked in excess of 40 in a workweek, including hours worked "off the clock," either before or after their scheduled shifts and/or during these employees' unpaid meal periods. *See* NYLL Articles 6 & 9; 12 NYCRR Part 142.

150.    Throughout the relevant period, Albany Med (1) automatically deducted 30 minutes/shift from Mizzero's and the New York Class Members' recorded hours worked for meal breaks; (2) automatically rounded these employees recorded time punches to the nearest 15-minute increment to Albany Med's primary benefit; and (3) required these employees to work unpaid "off the clock" before and/or after their shifts.

151.    But throughout the relevant period, Albany Med expected and required Mizzero and the New York Class Members to remain on-duty and be available to work during their unpaid meal breaks and/or before/after their scheduled shifts.

152.    Mizzero and the New York Class Members have been harmed as a direct and proximate result of Albany Med's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Albany Med derived a direct and substantial benefit.

153.    Albany Med knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Mizzero and the New York Class Members overtime compensation for all overtime hours worked.

154.    Albany Med's failure to pay Mizzero and the New York Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay overtime compensation for all overtime hours worked made in good faith.

155.    Thus, Albany Med's violations of the NYLL were "willful" within the meaning of NYLL § 198.

156.    Accordingly, Mizzero and the New York Class Members are entitled to recover their unpaid overtime compensation, plus liquidated damages, interest, penalties, and attorney's fees and costs.

### JURY DEMAND

157.    Mizzero already demanded a trial by jury. *See* ECF 1 at ¶ 141.

RELIEF SOUGHT

WHEREFORE, Mizzero, individually and on behalf of the Putative Class Members, seeks the following relief:

a.      An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.      An Order appointing Mizzero and her counsel to represent the interests of the FLSA Collective and New York Class;

d.      An Order pursuant to Section 16(b) of the FLSA finding Albany Med liable for unpaid back wages due to Mizzero and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid compensation;

e.      An Order pursuant to the NYLL finding Albany Med liable for unpaid back wages due to Mizzero and the New York Class Members, plus liquidated damages in an amount equal to their unpaid compensation, and penalties;

f.      Judgment awarding Mizzero and the Putative Class Members all unpaid wages, penalties, and other damages available under the FLSA and NYLL;

g.      An Order awarding attorney's fees, costs, and expenses;

h.      Pre- and post-judgment interest at the highest applicable rates; and

i.      Such other and further relief as may be necessary and appropriate.

Dated: September 24, 2024                    Respectfully submitted,

                                   /s/ William M. Hogg
                                   David I. Iversen (NDNY Bar # 519342)
                                   **E. STEWART JONES HACKER MURPHY, LLP**
                                   28 Second Street
                                   Troy, New York 12180
                                   518-274-5820 – Telephone
                                   518-274-5875 – Fax
                                   diversen@joneshacker.com

Michael A. Josephson (NDNY Bar # 704509)
Andrew W. Dunlap (NDNY Bar # 704507)
William M. Hogg NDNY Bar # 701969)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Fax
mjosephson@mybackwages.com
adunlap@mybackwages.com
whogg@mybackwages.com

Richard J. (Rex) Burch (NDNY Bar # 704544)
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander (NDNY Bar # 704553)
Austin W. Anderson (NDNY Bar # 704554)
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Fax
clif@a2xlaw.com
austin@a2xlaw.com

**ATTORNEYS FOR PLAINTIFF &**
**THE PUTATIVE CLASS MEMBERS**