UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TINAMARIE MIZZERO, individually and for
others similarly situated,

                              Plaintiff,              1:23-cv-548
                                                  (ECC/ML)

v.

ALBANY MED HEALTH SYSTEM,

                              Defendant.
_____

William M. Hogg, Esq., *for Plaintiff*
Michael D. Billok, Esq., *for Defendant*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

      Plaintiff Tinamarie Mizzero commenced this action on May 5, 2023 against Defendant Albany Med Health System alleging violations of the Fair Labor Standards Act and New York Labor Law as to herself and other similarly situated employees of Albany Med.  Dkt. No. 1. Plaintiff filed a First Amended Complaint three days later.  Dkt. No. 7.  After Defendant's motion to dismiss the First Amended Complaint, the claims for overtime violations based on mealtime violations remained, while the claims for overtime violations based on unpaid pre- or post-shift work and time-clock rounding favoring the employer were dismissed.[1]  Dkt. No. 45, at 14-18.[2] After receiving permission from the Court, Plaintiff filed a Second Amended Complaint.  Dkt. Nos. 61, 62.  Presently before the Court is Defendant's motion to dismiss the Second Amended

---

[1] This case was previously assigned to U.S. District Judge Glenn T. Suddaby.

[2] Citations to page numbers refer to pagination generated by the ECF system, unless otherwise noted.

Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 68. The motion is fully briefed. Dkt. Nos. 72, 73.

I.   BACKGROUND[3]

At all times relevant to this case, Plaintiff Tinamarie Mizzero was employed as a Medical Assistant by Albany Med Health System (Albany Med) and was classified as a non-exempt employee. Second Amended Complaint (SAC), Dkt. No. 62 ¶¶ 2, 38-39, 41, 43. Albany Med automatically deducted 30 minutes per day from Plaintiff's work time for meal breaks, despite requiring Plaintiff to work through her breaks.[4] *Id*. at ¶¶ 5-8, 49-51. Additionally, Albany Med has a policy of automatically rounding employees' time punches to the nearest 15-minute increment in a manner that favors Albany Med. *Id*. at ¶ 60. Albany Med also required Plaintiff to do unpaid "off the clock" work by arriving 30 minutes before her scheduled shift and only clocking in within approximately 6 or 7 minutes of her scheduled start time. *Id*. at ¶¶ 62-68. Albany Med has similar policies with respect to work after a shift, requiring 15-30 minutes of post-shift work on average, but requiring employees to clock out no later than 6 or 7 minutes after the scheduled end of their shift. *Id*. at ¶¶ 69-72. Plaintiff estimates that Albany Med required employees to perform approximately 18.5 minutes of off-the clock work before each shift and approximately 16 minutes of off-the-clock work after each shift on average. *Id*. at ¶¶ 68, 73.

II.   LEGAL STANDARD

---

[3] These facts are drawn from the Second Amended Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] Plaintiff asserts that these harms were also experienced by other similarly situated Albany Med employees and seeks to represent a putative class. SAC ¶¶ 3, 6-9, 18. Because a class has not been certified in this action, this motion will only address the facts as applied to Plaintiff.

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION[5]

Defendant argues that the Second Amended Complaint fails to remedy the deficiencies from the First Amended Complaint, namely that Plaintiff fails to provide sufficient specificity about the policies surrounding pre- and post-shift work. Defendant's Memorandum of Law (Def. MOL) at 10, Dkt. No. 68-5. Defendant has also attached Plaintiff's purported time sheets as an exhibit to its motion, arguing that in fact there was no improper rounding of Plaintiff's time. *Id*. at 11-16; Dkt. Nos. 68-2, 68-4. Plaintiff responds that the Second Amended Complaint contains sufficient specificity to meet the lenient motion to dismiss standard. Plaintiff's Memorandum of

---

[5] Portions of this legal discussion are taken from Judge Suddaby's decision on Defendant's motion to dismiss the First Amended Complaint. Dkt. No. 45 at 8-9.

Law (Pl. MOL) at 9-10, Dkt. No. 72.  Plaintiff also argues that it would be inappropriate for the Court to consider Defendant's proffered documentary evidence at the motion to dismiss stage because the documents were not incorporated by reference or integral to the Second Amended Complaint.  *Id*. at 10-12.

"FLSA's overtime provision states that 'no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'"  *Lundy v. Catholic Health Sys. Of Long Island Inc.*, 711 F.3d 106, 110 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).  "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy*, 711 F.3d at 114.  This has been found to require "some degree of 'specificity.'"  *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 114 (2d Cir. 2023) (quoting *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013)).  "[W]hether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Lundy*, 711 F.3d at 114 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  "While this Court has not required plaintiffs to keep careful records and plead their hours with mathematical precision, we have recognized that it is employees' memory and experience that lead them to claim in federal court that they have been denied overtime in violation of the FLSA in the first place.  Our standard requires that plaintiffs draw on those resources in providing complaints with sufficiently developed factual allegations" in order to sustain a claim at the pleadings stage.  *Dejesus v. HF Mgmt Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013).  Further, although there is no strict requirement to provide an approximation of overtime hours, such an approximation "'may

4

help draw a plaintiff's claim closer to plausibility.'" *Herrera*, 84 F.4th at 115 (quoting *Dejesus*, 726 F.3d at 88). NYLL overtime claims are subject to the same standards as FLSA overtime claims. *Nakahata*, 723 F.3d at 200.

"Rounding practices are not per se unlawful" under FLSA. *Burns v. Haven Manor Health Care Ctr., LLC*, 13-cv-5610, 2015 WL 1034881, at *1 n.2 (E.D.N.Y. Mar. 10, 2015). "[A] neutral time-keeping system that 'permits both upward and downward rounding' of each punch to the nearest quarter hour [is] permissible under the FLSA." *Vasquez v. Victor's Cafe 52nd St., Inc.*, No. 18-cv-10844, 2019 WL 4688698, at *3 (S.D.N.Y. Sept. 26, 2019) (quoting *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1077 (9th Cir. 2016)). According to Federal regulations,

> It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b). Although "no New York statute or regulation addresses the permissibility of rounding policies, New York's Department of Labor generally follows the FLSA and related regulations." *Gordon v. Kaleida Health*, 299 F.R.D. 380, 405 n.25 (W.D.N.Y. 2014).

For the following reasons, the Court concludes that the Second Amended Complaint sufficiently addressed the deficiencies identified by this Court in order to survive the Defendant's motion to dismiss.[6] The Court previously noted that, while Plaintiff sufficiently pled that she

---

[6] Although not binding on this Court, the Magistrate Judge's explanation about why the Second Amended Complaint "cured" the previously identified "deficiencies" is persuasive. Dkt. No. 70 at 21-22.

regularly worked more than 40 hours per week, she did not necessarily plead that she was not paid appropriately for all of those hours. Dkt. No. 45 at 12-13. With respect to lunch breaks, any unpaid lunch break in a work week of more than 40 hours would necessarily be unpaid overtime, and the Court concluded that Plaintiff had sufficiently pled a FLSA (and NYLL) claim for the unpaid lunch breaks. *Id*. at 13-16. Central to this conclusion was the fact that the mealtime violations were alleged to have occurred daily, so any week in which Plaintiff worked more than 40 hours would necessarily involve unpaid overtime for lunch breaks during that week. *Id*. Yet the Court observed that, in the First Amended Complaint, Plaintiff had not sufficiently pled that any of the pre- or post-shift work occurred during a week in which Plaintiff also worked more than 40 hours. *Id*. at 16.

The Second Amended Complaint now includes the specific allegation that Plaintiff was expected to arrive approximately 20-to-30 minutes before her scheduled shift for each shift worked but was instructed only to clock in within approximately 6 or 7 minutes of the scheduled start time. SAC ¶¶ 64, 67-68. Plaintiff similarly was required to "stay late after clocking out each shift" but was instructed to clock out within 6 to 7 minutes after their scheduled time. *Id*. ¶¶ 69-70. These allegations sufficiently raise a plausible claim that FLSA and NYLL overtime violations occurred in connection with Plaintiff's pre- and post-shift work, because Plaintiff now alleges that these instances of unpaid work occurred every week which, combined with the fact that Plaintiff worked more than 40 hours in some weeks, means that unpaid pre- or post-shift work must have occurred in those weeks.

The Court previously noted that Plaintiff failed to connect the dots as to how Defendant's time-rounding policy worked to Defendant's benefit. Dkt. No. 45 at 17. The Second Amended Complaint now specifically alleges that Defendant has a policy of requiring employees to clock in

no earlier than 6 or 7 minutes prior to the start of their shift, and to clock out no later than 6 or 7 minutes following their shift. SAC ¶¶ 67, 69. Defendant's time-monitoring system automatically rounds time punches to the nearest 15-minute increment. *Id*. at ¶ 60. Plaintiff now alleges the mechanism by which the policy is non-neutral in application over time, because compliance with Defendant's requirement to clock in or out within 6 or 7 minutes of the scheduled start time means the clock will always round in the employer's favor. *Id.* at ¶ 76. This policy has the aggregate effect of rounding in favor of the employer and is therefore not a neutral time-rounding policy. The existence of a time-rounding policy that favors the employer and the fact that Plaintiff was regularly expected to perform work beyond her scheduled shift, necessarily means that Plaintiff performed some amount of unpaid work in connection with this policy. This unpaid work, in combination with Plaintiff's allegations that she was regularly working more than 40 hours per week, SAC ¶ 87, "push[es] that aspect of her [unpaid overtime] claim from speculative to plausible," Dkt. No. 45 at 17.[7]

Defendant attempts to rebut Plaintiff's arguments by introducing time-clock records which purport to demonstrate that Plaintiff did not in fact clock in within 6 or 7 minutes of her scheduled start times. Defendant argues that it is permissible for the Court to review this documentary evidence at this time because it is "incorporated" into or "integral to" the pleadings. Def. MOL at 11-13. Plaintiff responds that Plaintiff did not incorporate these documents into the pleadings because she did not rely on the pay records when drafting the Second Amended Complaint and questions the authenticity and accuracy of the documents. Pl. MOL at 10-12.

---

[7] The Court notes that this "non-neutral time rounding policy" theory is, in effect, a second theory to address the same injury of unpaid pre- and post-shift work. Because plaintiffs are permitted to advance alternative theories of the same harm, Fed R. Civ. P. 8(d)(2), the Court will allow both to proceed.

"On a motion to dismiss, a court 'may review only a narrow universe of materials' without converting the motion into one for summary judgment." *Lora v. Centralized Mgmt. Serv., Inc.*, No. 18-cv-4253, 2020 WL 3173025 at *1 (S.D.N.Y. June 12, 2020) (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)). "[D]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered" for purposes of a motion to dismiss. *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (citation omitted). "'Mere discussion or limited quotation of a document in a complaint' does not qualify as incorporation." *Lora,* 2020 WL 3173025 at *1 (quoting *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). "To be integral to a complaint, the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the complaint.'" *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Chambers v. Time Warner,* 282 F.3d 147, 153 (2d Cir. 2002)). "Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers,* 282 F.3d at 153 (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)).

A document thus does not become integral merely because it is highly probative of facts contained in the complaint. The actual document itself needs to have been in the plaintiff's possession, and it must have been relied on by the plaintiff in drafting the complaint. The question

8

is not whether the facts contained in the document are integral to the complaint, but whether the document itself is integral. The archetypal "integral" document is the contract in an action where parties dispute the interpretation of contractual provisions. *See e.g. Chambers,* 282 F.3d at 153-54. On the other hand, courts have held that tax and payroll documents are not integral to an employment discrimination claim, even when the plaintiff made specific factual allegations about the number of employees employed by the defendant and the tax and payroll documents squarely address that fact. *Lora,* 2020 WL 3173025 at *2.[8]

Here, the documents Defendant offers to address Plaintiff's clock-in and clock-out time allegations may not be considered because there is no basis to conclude that Plaintiff relied on those documents to prepare the Second Amended Complaint, and Plaintiff does not cite to the documents in the Second Amended Complaint. In addition, given that the documents are offered to contradict Plaintiff's claims, it is highly unlikely that Plaintiff relied on them when drafting the Second Amended Complaint. Instead, the documents indicate that these facts are disputed. The question of whether the documents disprove any elements of Plaintiff's claims is a dispute of fact that will be addressed during a later stage of this litigation when there is a more complete evidentiary record.

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss under Rule 12(b)(6), Dkt. No. 68, is **DENIED**.

---

[8] Defendant's reliance on *Fridman v. GCS Computers LLC*, 17-cv-6698, 2019 WL 1017534 (S.D.N.Y. Mar. 4, 2019) is misplaced. In that case, the plaintiff attached a limited selection of his own pay slips to the complaint, and the defendant introduced the remainder of the plaintiff's payroll records for those pay periods to put the plaintiff's attached pay slips in context. *Id*. at *2-3.

**IT IS SO ORDERED.**

Dated: September 25, 2025

_____
Elizabeth C. Coombe
U.S. District Judge